UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KELLY SOWELL                                :
as parent and next friend of the minor child,:
D.S.,                                       :
and                                         :
D.S., individually                          :
                                            :
        Plaintiffs                          :
                                            :
        v.                                  : CIV. ACTION NO.  07-1659 (EGS):
DISTRICT OF COLUMBIA,                        :
A Municipal Corporation                     :
                                            :
        Defendant                           :

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  Plaintiffs are seeking a reversal of the June 7, 2007, Hearing Officer's Decision which determined that DS had not been denied access to a free and appropriate education.  Plaintiffs allege that the Hearing Officer:

1) erred when he concluded Defendant provided D.S. 's with a Free Appropriate Public Education (FAPE) despite the fact that the Defendant refused to develop a full time, out of general education IEP, during its December 18, 2006 meeting; not because D.S. did not qualify for the requested program but because the DCPS did not have any programs that were 100% Out of General Education.

2) erred when he concluded that Drew E.S. could provide a FAPE for D.S.

3) erred when he concluded that DCPS did not violate the student's due process rights when it failed to hold a placement meeting prior to the initiation of a Due Process

Complaint.

     4) erred when he concluded that DCPS was not required to provide an O.T. evaluation, and

     5) erred when he failed to find that DCPS had violated the student's due process rights and when he failed to find that DCPS had denied D.S. FAPE.

     In support of its Motion and pursuant to Local Rules 7(a),(c), and (h), the Plaintiff submits its Memorandum of Points and Authorities in Support of its Motion for Summary Judgement, a Statement of Material Facts as to which there is no Genuine Issue, and a proposed Order.

Respectfully submitted,

_____
Paul S. Dalton, Esq.
D.C. Bar No. 439118
Ellen Douglass Dalton, Esq
D.C. Bar No.411612
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KELLY SOWELL** | : |
| **as parent and next friend of the minor child,** | : |
| **D.S.,** | : |
| **and** | : |
| **D.S., individually** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| **v.** | : **CIV. ACTION NO.  07-1659 (EGS):** |
| **DISTRICT OF COLUMBIA,** | : |
| **A Municipal Corporation** | : |
| | : |
| **Defendant** | : |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56(c), finding that Hearing Officer Woods erred in his determination that D.S. had not been denied access to a free and appropriate education.  Plaintiffs allege that the Defendant violated D.S.'s right to a Free Appropriate Public Education (FAPE) in the following ways:

1)  refusing to develop a full time, out of general education IEP, during its December 18, 2006 meeting; not because D.S. did not qualify for the requested program but because the DCPS did not have any programs that were 100% Out of General Education.

2) proposing Drew E.S. as an appropriate placement for D.S.

3) failing to hold a placement meeting prior to the initiation of a Due Process Complaint, and

4) failing to provide an O.T. evaluation

## **FACTUAL BACKGROUND**

1.      D.S. is a six (6) year old boy who began the 2006-2007 school year at DCPS's Benning Elementary School ("Benning ES"), after transferring from Fort Foote Elementary School in Prince George's County ("P.G. County"), Maryland.  On December 12, 2005, the Multi Disciplinary Team ("MDT") at Fort Foote wrote an initial Individual Education Plan ("IEP") for D.S. as a child with the disability classification of Developmental Delay.  The IEP called for five (5) hours of Classroom Instruction in Reading, five (5) hours of Classroom Instruction in Mathematics, and thirty (30) minutes of Speech/Language Therapy per week.  A Behavior Plan was also included in this IEP.

2.      On April 28, 2006, Fort Foote revised that IEP, increasing D.S.'s services to include fifteen (15) hours per week of Classroom Instruction.  This revised IEP maintained the thirty (30) minutes per week of Speech/Language Therapy, as well as the Behavior Plan.

3.      It became clear almost immediately upon the start of the 2006-2007 school year, that Benning ES was not an appropriate placement for D.S..  The school contacted Ms. Sowell numerous times within the first month of school to tell her that they could not handle D.S.'s behavioral needs.

4

4.      On September 21, 2006, Ms. Sowell received a note, allegedly from Mr. Bobbit, the Principal of Benning ES, stating that D.S.'s behavior was so severe that he would not be allowed to attend a full day of school unless Ms. Sowell accompanied him.

5.      On September 22, 2006, Ms. Sowell went to Benning ES to discuss the note she had received.  She met with Mr. Bobbit, who denied writing the note.  She also met with Ms. Smith, D.S.'s Guidance Counselor.  Ms. Smith told Ms. Sowell that the school was working on a behavior plan, and would like to meet on October 16, 2006, to review D.S.'s Maryland IEP and draft a DCPS IEP.

6.      On October 16, 2006 an MDT meeting was convened at Benning ES in order to change the PG County Public School IEP to a DCPS IEP.  Despite the fact that the Speech Pathologist, Ms. Perkins, requested to increase the Speech/Language Therapy, DCPS would not increase any services until after completing new evaluations.  The evaluations from Fort Foote, however, were still valid at this time. Ms. Sowell stated at this meeting that she felt her son needed more services, and also requested an Occupational Therapy ("OT") Evaluation.  However, the only evaluations listed on the Student Evaluation Plan were a Psychological, an Educational, and a Speech/Language.

7.      On December 18, 2006, the MDT reconvened to review the new evaluations and revise D.S.'s IEP.  The Comprehensive Psychological Report, dated November 10, 2006, stated that D.S. is a student with severe cognitive problems, as well as high levels of opposition, non-compliance and physical aggression towards adults and peers.  The evaluator noted that D.S. had already been diagnosed with Oppositional

Defiance Disorder.  The report recommended that D.S. receive services in a full time program which offers emotional support.

8.    The Speech and Language Evaluation Report, dated November 20, 2006, concluded that D.S. demonstrated a severe disorder in auditory comprehension and in expressive communication.  D.S. also demonstrated a moderate disorder in the areas of receptive and expressive vocabulary, as well as speech production.  The report recommended that D.S. attend Speech/Language Therapy at least one hour per week.

9.    The Vineland Adaptive Behavior Scale, dated November 27, 2006, was not administered to Ms. Sowell because the evaluator did not have the paperwork ready when they spoke on the phone.  Instead, the evaluator interviewed D.S.'s special education and general education teachers, and his speech therapist.  While the Vineland report indicated that D.S.'s Adaptive Behavior Composite is a 63, which is in the low range of overall functioning, Ms. Sowell stated at the MDT meeting that the Vineland was not accurate with respect to D.S.'s daily living skills.

10.    After reviewing the evaluations, and hearing the observations of D.S.'s mother and teachers, the team agreed that Benning ES was not an appropriate placement for D.S., because he requires a full-time program as a student with Mental Retardation (MR).  Specifically, the team decided that D.S. requires twenty-six (26) hours per week of Specialized Instruction, one (1) hour per week of Speech/Language Therapy, as well as thirty (30) minutes per week of Psychological Services.  The team also discussed adding the disability classification of Emotional Disturbance (ED) to D.S.'s IEP due to his behavioral problems.  However, it was

6

decided that given his young age, the ED classification should not yet be placed on

the IEP.  The team felt that these behaviors might improve if D.S. is in the

appropriate educational setting with one-on-one support.

11.   The MDT also had a discussion about the percent of time D.S. should be in

Specialized Instruction and Related Services.  Ms. Sowell explained that she felt that

D.S. needed a 100% out of General Education Setting.  It became apparent at the

meeting that D.S. needs a lot of individualized attention, and that his frustrations are

compounded when he interacts with higher-functioning peers.  The members of the

team from Benning ES, however, would only agree to 85% out of General

Education.  Their explanation was simply that DCPS did not have any programs that

were 100% out of General Education.  When counsel for the parent stated that the

IEP should be written based on D.S.'s needs, not based on the available programs

in DCPS, the DCPS team members still refused to change their position.

12.   At the conclusion of the December 18 meeting, Ms. Matthews, Special Education

Coordinator at Benning ES, assured Ms. Sowell that a placement packet would be

sent to the DCPS placement specialist immediately and a placement meeting would

be scheduled as soon as possible.  She stated that the team was in full agreement

that Benning ES is not an appropriate placement for D.S., and they would do

everything they could to expedite D.S.'s placement in an appropriate program.

13.   Counsel for the parent contacted the school several times since December 18,

2006,  to inquire as to when a placement meeting would be held.  By February 7,

2007, however, the parent has not received an invitation to a placement meeting,

and thus filed a due process complaint notice.

7

14.     After filing the due process complaint, DCPS proposed Drew Elementary School for D.S. The parent went to visit Drew E.S. and did not think that it was appropriate due to the varying ranges of disabilities within the classroom and the varying levels of functioning of the other students.

15.     The due process hearing initially convened on or around April 17, 2007 in front of Hearing Officer Frederick Woods.  Although the parties spent the entire day in the hearing, the hearing officer continued the case to a later date.  While the hearing had to be continued to finish the case, the parent did not waive her right to receive a decision within the time frame outlined in IDEIA.

16.     The first date for which the hearing office could schedule another hearing was more than 30 days later on May 22, 2007.

17.     On April 20, 2007, the parent filed a Motion for Preliminary Injunction with Judge Friedman in the United States District Court for the District of Columbia, in accordance with the *Blackman Jones* Consent Decree.

18.     On April 24, 2007, the court referred the matter to the Special Master.

19.     On May 1, 2007, the Special Master convened a meeting with the parties.

20.     On May 4, 2007, the Special Master filed her Report and Recommendations with the Court.  The Special Master recommended that the parent's request for relief be granted and that DCPS fund placement for D.S. at the Children's Guild.

21.     Subsequent to the Special Master's Report and Recommendation the District Court held the matter in abeyance until June 1, 2007, in order for the Due Process Hearing scheduled for May 22, 2007, to go forward.

22.     Despite the Special Master's recommendation that injunctive relief be granted

and DCPS be required to fund a private placement for the student, a second Due

Process Hearing was held on May 22, 2007.  After arguments by both parties the

matter was continued until June 1, 2007.

23.     After the taking of testimony of several witnesses the matter had to again be

continued to hear additional evidence on June 5, 2007.

24.     On June 8, 2007, the Hearing Officer issued his decision and dismissed the

parent's complaint with prejudice.  *See* HOD attached.


**ARGUMENT**

**The Court should Grant Summary Judgment and Reverse the HOD, because
the Hearing Officer Erred when he concluded DCPS met their obligations under
IDEIA and provided a Free Appropriate Education to D.S..**

The party seeking summary judgment has the initial responsibility of demonstrating

the absence of a genuine dispute of material facts through the pleadings, depositions,

answers to interrogatories, admissions on file, and in this case the administrative

record. *Celortex Corp v.Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56.  The

nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by

'depositions, answers to interrogatories, and admissions on file,' designate 'specific

facts showing that there is a genuine issue for trial.'" *See Celortex* at 324.  In the instant

case, the facts are clear when reviewing the administrative record.

The issues in this case are legal in nature because the underlying factual issues are

undisputed.  When an action is brought pursuant to the IDEA, the court is required [*17]

9

to review the administrative record, hear additional evidence presented at the request of the parties, and based "on the preponderance of evidence shall grant such relief as the court determines is appropriate." Razzaghi v. District of Columbia, 2005 U.S. Dist. LEXIS 36771, *10-11, No. 03-1619 (D.D.C. September 28, 2005) (citing 20 U.S.C. § 1415(i)(2)(c). "When no additional evidence is introduced in a civil suit seeking review of [a Hearing Officer Determination], a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." District of Columbia v. Ramirez, 377 F. Supp. 2d 63, 67 (D.D.C. 2005) (citing 20 U.S.C. § 1415(i)(2)(B)). District courts are to give the hearing officer's decision "due weight." See Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982) (holding that this provision "carries with it the implied requirement that due weight shall be given to" the administrative proceedings). However, the standard is "less deferential than that applied under the traditional substantial evidence test used in ordinary [*18] administrative review cases." Scorah v. District of Columbia, 322 F. Supp. 2d 12, 16 (D.D.C. 2004) and little deference is owed to a hearing decision that lacks reasoned and specific findings, Reid v. D.C., 401 F3d 516, 521 (D.C. Cir. 2005). (emphasis added).

**The Hearing Officer erred when he concluded Defendant provided D.S. 's with a Free Appropriate Public Education (FAPE) despite the fact that the Defendant refused to develop a full time, out of general education IEP, during its December 18, 2006 meeting; not because D.S. did not qualify for the requested program but because the DCPS did not have any programs that were 100% Out of General Education.**

10

On October 16, 2006 an MDT meeting was convened at Benning ES in order to change the PG County Public School IEP to a DCPS IEP.  Despite the fact that the Speech Pathologist, Ms. Perkins, requested to increase the Speech/Language Therapy, DCPS would not increase any services until after completing new evaluations.  On December 18, 2006, the MDT reconvened to review the new evaluations and revise D.S.'s IEP.  The Comprehensive Psychological Report, dated November 10, 2006, stated that D.S. is a student with severe cognitive problems, as well as high levels of opposition, non-compliance and physical aggression towards adults and peers.  The evaluator noted that D.S. had already been diagnosed with Oppositional Defiance Disorder.  The report recommended that D.S. receive services in a full time program which offers emotional support.

The Speech and Language Evaluation Report, dated November 20, 2006, concluded that D.S. demonstrated a severe disorder in auditory comprehension and in expressive communication.  D.S. also demonstrated a moderate disorder in the areas of receptive and expressive vocabulary, as well as speech production.  The report recommended that D.S. attend Speech/Language Therapy at least one hour per week.

The Vineland Adaptive Behavior Scale, dated November 27, 2006, was not administered to Ms. Sowell because the evaluator did not have the paperwork ready when they spoke on the phone.  Instead, the evaluator interviewed D.S.'s special education and general education teachers, and his speech therapist.  While the Vineland report indicated that D.S.'s Adaptive Behavior Composite is a 63, which is in the low range of overall functioning, Ms. Sowell stated at the MDT meeting that the Vineland was not accurate with respect to D.S.'s daily living skills.

11

After reviewing the evaluations, and hearing the observations of D.S.'s mother and teachers, the team agreed that Benning ES was not an appropriate placement for D.S., because he requires a full-time program as a student with Mental Retardation (MR). Specifically, the team decided that D.S. requires twenty-six (26) hours per week of Specialized Instruction, one (1) hour per week of Speech/Language Therapy, as well as thirty (30) minutes per week of Psychological Services. The team also discussed adding the disability classification of Emotional Disturbance (ED) to D.S.'s IEP due to his behavioral problems. However, it was decided that given his young age, the ED classification should not yet be placed on the IEP. The team felt that these behaviors might improve if D.S. is in the appropriate educational setting with one-on-one support.

The MDT also had a discussion about the percent of time D.S. should be in Specialized Instruction and Related Services. Ms. Sowell explained that she felt that D.S. needed a 100% out of General Education Setting. It became apparent at the meeting that D.S. needs a lot of individualized attention, and that his frustrations are compounded when he interacts with higher-functioning peers. The members of the team from Benning ES, however, would only agree to 85% out of General Education. Their explanation was simply that DCPS did not have any programs that were 100% out of General Education. When counsel for the parent stated that the IEP should be written based on D.S.'s needs, not based on the available programs in DCPS, the DCPS team members still refused to change their position.

Based on these facts, this is certainly a case as stated in *Reid,* that *little* deference should be given to the Hearing Officer and his decision should be reversed.

12

## **The Hearing Officer erred in when he concluded Defendant provided D.S. with a Free Appropriate Public Education (FAPE) when it proposed Drew E.S. as an appropriate placement for D.S.**

After filing the due process complaint, DCPS proposed Drew Elementary School for D.S. The parent went to visit Drew E.S. and did not think that it was appropriate due to the varying ranges of disabilities within the classroom and the varying levels of functioning of the other students and that it was not a full time out of general education program  A school district must make available to handicapped children a continuum of alternative placements including regular classes, special classes, private schools, home instruction, and instruction in hospitals and institutions and the child must be placed in the "least restrictive environment" responsive to the child's individual needs. 45 CFR 121a.551; Stuart v. Nappi, 443 F. Supp. 1235, 1242 (D.Conn.1978). Second, an educational program must meet the individual educational needs of each handicapped child. See, e.g., 20 U.S.C. § 1401(16), 45 CFR 121a.14, 121a.552, 45 CFR 84.33(b). The regulations specifically define an "appropriate" education as the provision of "regular or special education and related aids and services that are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met." 45 CFR 84.33(b)(1)(i). This emphasis on individualized treatment is also reflected in the federal requirement that an individual educational program, or IEP, be developed for each handicapped child. 0 U.S.C. 1401(19), 1412(4).  Clearly the Hearing Officer did not understand D.C.P.S.' burden of providing a continuum of levels of service and through that lack of understanding denied a FAPE to this student.

13

   The Hearing Officer erred when he concluded that DCPS did not violate D.S.' due process rights when it failed to hold a placement meeting prior to the initiation of a Due Process Complaint.

   The due process hearing initially convened on or around April 17, 2007 in front of Hearing Officer Frederick Woods.  Although the parties spent the entire day in the hearing, the hearing officer continued the case to a later date.  While the hearing had to be continued to finish the case, the parent did not waive her right to receive a decision within the time frame outlined in IDEIA.  The first date for which the hearing office could schedule another hearing was more than 30 days later on May 22, 2007.

   On April 20, 2007, the parent filed a Motion for Preliminary Injunction with Judge Friedman in the United States District Court for the District of Columbia, in accordance with the *Blackman Jones* Consent Decree.  On April 24, 2007, the court referred the matter to the Special Master.  On May 1, 2007, the Special Master convened a meeting with the parties.  On May 4, 2007, the Special Master filed her Report and Recommendations with the Court.  The Special Master recommended that the parent's request for relief be granted and that DCPS fund placement for D.S. at the Children's Guild.

   Subsequent to the Special Master's Report and Recommendation the District Court held the matter in abeyance until June 1, 2007, in order for the Due Process Hearing scheduled for May 22, 2007, to go forward.  Despite the Special Master's recommendation that injunctive relief be granted and DCPS be required to fund a private placement for the student, a second Due Process Hearing was held on May 22, 2007.  After arguments by both parties the matter was continued until June 1, 2007.

After the taking of testimony of several witnesses the matter had to again be continued to hear additional evidence on June 5, 2007.  On June 8, 2007, the Hearing Officer issued his decision and dismissed the parent's complaint with prejudice.  Had the Hearing Officer required a placement meeting before the Hearing plaintiff would have had an opportunity to challenge the recommended placement and provide reasons why the placement they were recommending should have been adopted.

The Hearing Officer erred when he concluded that DCPS did not violate D.S.' rights when it failed to conduct an O.T. evaluation following his mother's request.

Pursuant to 20 U.S.C. 1400 et seq. and 5 D.C.M.R. § 3000.1 (2003)  DCPS is required to fully evaluate every child suspected of having a disability within the District of Columbia, ages 3 through 22, determine their eligibility for special education and related services and, if they are found eligible, provide special education and related services through an appropriate IEP and Placement.

**CONCLUSION**

Based on the arguments above the Plaintiff requests that this Court issue a Summary Judgment for the Plaintiff and against the Defendant and reverse the June 7, 2007, Hearing Officer's Decision.

Respectfully submitted,

_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118

_____/s/_____
Ellen Douglass Dalton, Esq
D.C. Bar No.  411612
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document with its attachments was filed electronically on this 5h day of June,  2008.

/s/
Paul S. Dalton, Esq.

16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KELLY SOWELL** | : |
| **as parent and next friend of the minor child,** | : |
| **D.S.,** | : |
| **and** | : |
| **D.S., individually** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| **v.** | : **CIV. ACTION NO.  07-1659 (EGS):** |
| **DISTRICT OF COLUMBIA,** | : |
| **A Municipal Corporation** | : |
| | : |
| **Defendant** | : |

<u>**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**</u>

1.    D.S. is a six (6) year old boy who began the 2006-2007 school year at DCPS's Benning Elementary School ("Benning ES"), after transferring from Fort Foote Elementary School in Prince George's County ("P.G. County"), Maryland.  On December 12, 2005, the Multi Disciplinary Team ("MDT") at Fort Foote wrote an initial Individual Education Plan ("IEP") for D.S. as a child with the disability classification of Developmental Delay. The IEP called for five (5) hours of Classroom Instruction in Reading, five (5) hours of Classroom Instruction in Mathematics, and thirty (30) minutes of Speech/Language Therapy per week.  A Behavior Plan was also included in this IEP.

2.    On April 28, 2006, Fort Foote revised that IEP, increasing D.S.'s services to include fifteen (15) hours per week of Classroom Instruction.  This revised IEP maintained the thirty (30) minutes per week of Speech/Language Therapy, as well as the Behavior Plan.

3.      It became clear almost immediately upon the start of the 2006-2007

school year, that Benning ES was not the appropriate placement for D.S.

The school contacted Ms. Sowell numerous times within the first month of

school to tell her that they could not handle D.S.'s behavioral needs.

4.      On September 21, 2006, Ms. Sowell received a note, allegedly from Mr.

Bobbit, the Principal of Benning ES, stating that D.S.'s behavior was so

severe that he would not be allowed to attend a full day of school unless

Ms. Sowell accompanied him.

5.      On September 22, 2006, Ms. Sowell went to Benning ES to discuss the

note she had received.  She met with Mr. Bobbit, who denied writing the

note.  She also met with Ms. Smith, D.S.'s Guidance Counselor.  Ms.

Smith told Ms. Sowell that the school was working on a behavior plan, and

would like to meet on October 16, 2006, to review D.S.'s Maryland IEP

and draft a DCPS IEP.

6.      On October 16, 2006 an MDT meeting was convened at Benning ES in

order to change the PG County Public School IEP to a DCPS IEP.

Despite the fact that the Speech Pathologist, Ms. Perkins, requested to

increase the Speech/Language Therapy, DCPS would not increase any

services until after completing new evaluations.  The evaluations from Fort

Foote, however, were still valid at this time.  Ms. Sowell stated at this

meeting that she felt her son needed more services, and also requested

an Occupational Therapy ("OT") Evaluation.  However, the only

evaluations listed on the Student Evaluation Plan were a Psychological,

an Educational, and a Speech/Language.

7.    On December 18, 2006, the MDT reconvened to review the new

evaluations and revise D.S.'s IEP.  The Comprehensive Psychological

Report, dated November 10, 2006, stated that D.S. is a student with

severe cognitive problems, as well as high levels of opposition, non-

compliance and physical aggression towards adults and peers.  The

evaluator noted that D.S. had already been diagnosed with Oppositional

Defiance Disorder.  The report recommended that D.S. receive services in

a full time program which offers emotional support.

8.    The Speech and Language Evaluation Report, dated November 20, 2006,

concluded that D.S. demonstrated a severe disorder in auditory

comprehension and in expressive communication.  D.S. also

demonstrated a moderate disorder in the areas of receptive and

expressive vocabulary, as well as speech production.  The report

recommended that D.S. attend Speech/Language Therapy at least one

hour per week.

9.    The Vineland Adaptive Behavior Scale, dated November 27, 2006, was

not administered to Ms. Sowell because the evaluator did not have the

paperwork ready when they spoke on the phone.  Instead, the evaluator

interviewed D.S.'s special education and general education teachers, and

his speech therapist.  While the Vineland report indicated that D.S.'s

Adaptive Behavior Composite is a 63, which is in the low range of overall

functioning, Ms. Sowell stated at the MDT meeting that the Vineland was

not accurate with respect to D.S.'s daily living skills.

10.    After reviewing the evaluations, and hearing the observations of D.S.'s mother and teachers, the team agreed that Benning ES was not an appropriate placement for D.S., because he requires a full-time program as a student with Mental Retardation (MR).  Specifically, the team decided that D.S. requires twenty-six (26) hours per week of Specialized Instruction, one (1) hour per week of Speech/Language Therapy, as well as thirty (30) minutes per week of Psychological Services.  The team also discussed adding the disability classification of Emotional Disturbance (ED) to D.S.'s IEP due to his behavioral problems.  However, it was decided that given his young age, the ED classification should not yet be placed on the IEP.  The team felt that these behaviors might improve if D.S. is in the appropriate educational setting with one-on-one support.

11.    The MDT also had a discussion about the percent of time D.S. should be in Specialized Instruction and Related Services.  Ms. Sowell explained that she felt that D.S. needed a 100% out of General Education Setting.  It became apparent at the meeting that D.S. needs a lot of individualized attention, and that his frustrations are compounded when he interacts with higher-functioning peers.  The members of the team from Benning ES, however, would only agree to 85% out of General Education.  Their explanation was simply that DCPS did not have any programs that were 100% out of General Education.  When counsel for the parent stated that the IEP should be written based on D.S.'s needs, not based on the

available programs in DCPS, the DCPS team members still refused to change their position.

12. At the conclusion of the December 18 meeting, Ms. Matthews, Special Education Coordinator at Benning ES, assured Ms. Sowell that a placement packet would be sent to the DCPS placement specialist immediately and a placement meeting would be scheduled as soon as possible.  She stated that the team was in full agreement that Benning ES is not an appropriate placement for D.S., and they would do everything they could to expedite D.S.'s placement in an appropriate program.

13.  Counsel for the parent contacted the school several times since December 18, 2006,  to inquire as to when a placement meeting would be held.  By February 7, 2007, however, the parent has not received an invitation to a placement meeting, and thus filed a due process complaint notice.

14. After filing the due process complaint, DCPS proposed Drew Elementary School for D.S. The parent went to visit Drew E.S. and did not think that it was appropriate due to the varying ranges of disabilities within the classroom and the varying levels of functioning of the other students.

15. The due process hearing initially convened on or around April 17, 2007 in front of Hearing Officer Frederick Woods.  Although the parties spent the entire day in the hearing, the hearing officer continued the case to a later date.  While the hearing had to be continued to finish the case, the parent did not waive her right to receive a decision within the time frame outlined

in IDEIA.

16. The first date for which the hearing office could schedule another hearing was more than 30 days later on May 22, 2007.

17. On April 20, 2007, the parent filed a Motion for Preliminary Injunction with Judge Friedman in the United States District Court for the District of Columbia, in accordance with the *Blackman Jones* Consent Decree.

18. On April 24, 2007, the court referred the matter to the Special Master.

19. On May 1, 2007, the Special Master convened a meeting with the parties.

20. On May 4, 2007, the Special Master filed her Report and Recommendations with the Court.  The Special Master recommended that the parent's request for relief be granted and that DCPS fund placement for D.S. at the Children's Guild.

21. Subsequent to the Special Master's Report and Recommendation the District Court held the matter in abeyance until June 1, 2007, in order for the Due Process Hearing scheduled for May 22, 2007, to go forward.

22. Despite the Special Master's recommendation that injunctive relief be granted and DCPS be required to fund a private placement for the student, a second Due Process Hearing was held on May 22, 2007.  After arguments by both parties the matter was continued until June 1, 2007.

23. After the taking of testimony of several witnesses the matter had to again be continued to hear additional evidence on June 5, 2007.

24. On June 8, 2007, the Hearing Officer issued his decision and dismissed the parent's complaint with prejudice.

Respectfully submitted,


_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
_____/s/_____
Ellen Douglass Dalton, Esq
D.C. Bar No.  411612
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document with its attachments was filed electronically on this _____ day of _____,  2008.


_____/s/_____
Paul S. Dalton, Esq.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KELLY SOWELL** | **:** |
| **as parent and next friend of the minor child,** | **:** |
| **D.S.,** | **:** |
| **and** | **:** |
| **D.S., individually** | **:** |
| | **:** |
| **Plaintiffs** | **:** |
| | **:** |
| **v.** | **: CIV. ACTION NO.  07-1659 (EGS):** |
| **DISTRICT OF COLUMBIA,** | **:** |
| **A Municipal Corporation** | **:** |
| | **:** |
| **Defendant** | **:** |

## ORDER

Upon consideration of the Plaintiff's Motion for Summary Judgment, and any

opposition thereto, it is hereby

ORDERED: that Plaintiff's Motion for Summary Judgment is GRANTED;

FURTHER ORDERED:  The June 8, 2007 Hearing Officer's Decision is

reversed.

SO ORDERED.


_____              _____
Date                                        Emmet G. Sullivan
                                             United States District Judge