**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KELLY SOWELL,                           :
                                        :
        **Plaintiff,**                  :
                                        :
        **v.**                          :   **Civ. No. 07-1659 (EGS)**
                                        :
**GOVERNMENT OF THE**                   :
**DISTRICT OF COLUMBIA,**               :
                                        :
        **Defendant.**                  :
                                        :

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Defendant District of Columbia, by counsel, respectfully moves for summary

judgment pursuant to Fed. R. Civ. P. 56 and LCvR 56.1.

A memorandum of points and authorities, a statement of material facts as to

which there are no genuine issues in dispute, and a proposed order are attached hereto.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

<u>**/s/ Edward P. Taptich**</u>
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

1

**/s/ Amy Caspari**
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
July 10, 2008                                    Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELLY SOWELL, | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Civ. No. 07-1659 (EGS) |
| | : |
| GOVERNMENT OF THE | : |
| DISTRICT OF COLUMBIA, | : |
| | : |
| **Defendant.** | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**FACTUAL BACKGROUND**

D.S. began attending Benning E.S., a District of Columbia Public School

("DCPS"), during the 2006-2007 school-year.  R. 2.  Previous to that, he was a student at

Fort Foote Elementary School ("Fort Foote") in Prince George's County, Maryland.  R.

59.  While at Fort Foote, an Individualized Education Plan ("IEP") was implemented for

D.S. calling for 15 hours of special education instruction, and 30 minutes of speech and

language therapy, each week.  R. 59.  Benning E.S. immediately implemented that IEP.

R. 758.[1]

---

[1] Pursuant to 20 U.S.C. §§ 1414 (d)(l)(A)(i)(II)(aa) and (bb), IEP means a written statement for each child
with a disability that includes . . . "measurable annual goals . . . designed to meet the child's needs . . . to
enable the child to . . . make progress in the general education curriculum; and meet each of the child's
other educational needs that results from the child's disability."  Pursuant to 20 U.S.C. § 1414 (d)(2)(A),
"at the beginning of each school year, each local educational agency ... shall have in effect" an IEP as
defined by 20 U.S.C. § 1414 (d)(1)(A).  "In the case of a child . . . who transfers school districts within
the same academic year, . . .and who had an IEP that was in effect in another State, the local educational
agency shall provide such child with a free appropriate public education, including services comparable
to those described in the previously held IEP, in consultation with the parents until such time as the local
educational agency conducts an evaluation pursuant to subsection (a)(1) of this section, if determined to
be necessary by such agency, and develops a new IEP, if appropriate. . . ." 34 C.F.R. § 300.323(e)-(g);

1

From the start of the school-year, D.S. displayed behavioral problems at Benning E.S.  Thus, on October 16, 2007, a meeting was convened by DCPS to change the Forte Foote IEP and to create a new student evaluation plan ("SEP") (an SEP prescribes a series of student evaluations for purposes of creating a new IEP).  R. 85.  On December 18, 2006, DCPS reconvened to review the evaluations.  R. 152.  The team, including the parent, increased D.S.' services to twenty-six hours per week of specialized instruction, one hour per week of speech and language therapy, and thirty minutes per week of psychological services, and therefore, agreed that Benning E.S. was now not an appropriate placement.  R. 142.  The team also agreed that D.S. should be classified as emotionally disturbed, but acknowledged that such a classification was not in his best interest, because they felt his behavior might improve in the right educational setting.  R. 142, 152.

The members of the team further agreed that the student's least restrictive environment ("LRE") would be out-of-general-education 85% of the time Id.[2]

---

20 U.S.C. 1414(d)(2)(C).

[2] The LRE is defined in 20 U.S.C. § 1412(a)(5), 34 C.F.R. § 300.114, and D.C. Mun. Regs. tit. 5, § 3011 (2006), which require that:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled; and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

This requirement, that students with disabilities be schooled with regular education students whenever possible, has been emphasized repeatedly in the District of Columbia where the LRE has been deemed analogous to education with children who are not learning disabled.  Diatta v. District of Columbia, 319 F.Supp.2d 57, 63 (D.D.C. 2004); LeSesne v. District of Columbia, 2005 WL 3276205, at *7 (D.D.C. 2005).

The parent objected to 85% placement proposal and requested that D.S. be placed out of regular education 100% of the time.  <u>Id</u>.  The parent filed a due process complaint on February 7, 2007, regarding the dispute as to the amount of services recommended.  R. 165.  Meanwhile, DCPS proposed Drew E.S. as D.S.' educational placement; the parent also objected to the appropriateness of that placement.  R. 173.

On April 17, 2007, a due process hearing convened.  R. 208.  The parties spent the day at hearing, but more time was needed to present their evidence. <u>Id</u>.  Thus, the Hearing Officer continued the hearing to May 22, 2007, as recommended by the parties. R. 26.  The hearing was again continued to June 1, 2007, and finally to June 5, 2007.  R. 431.  On June 8, 2007, the Hearing Officer issued his decision ("HOD") dismissing Plaintiff's claims with prejudice.  <u>Id</u>.

## <u>ARGUMENT</u>

### 1.    <u>The standard for summary judgment.</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Tao v. Freeh</u>, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of

affecting the substantive outcome of the litigation.  Id.; Laningham v. U.S. Navy, 813

F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEIA dictates that "the court [ ] shall receive the

records of the administrative proceedings; [ ] shall hear additional evidence at the request

of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant

such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When neither

party has requested the court to hear additional evidence, the "motion for summary

judgment is simply the procedural vehicle for asking the judge to decide the case on the

basis of the administrative record." Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th

Cir. 1997).

**2.      The HOD on the issues specified was based on, and supported by, the record.**

If a Plaintiff is aggrieved by a Hearing Officer's decision, an appeal of the

decision may be brought under the IDEIA.  20 USC §1415(i)(2)(B)(iii).  "The review is

independent but deference is still due to a state's administrative proceedings. . ." Board

of Educ. of  Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The party challenging the Hearing Officer's determination bears the burden of persuading

the court that the Hearing Officer's determination was incorrect.  Schaffer v. Weast, 546

U.S. 49 (2005); 5 DCMR 30 § 3030.3 (July 1, 2006).  The court may, "basing its decision

on the preponderance of the evidence, [ ] grant such relief as the court determines is

appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii).

In this case, the Hearing Officer addressed two main issues.  First, he addressed

the parties' dispute as to the meaning of the issue framed by the Plaintiff in her hearing

complaint: "Whether DCPS denied D.S. a FAPE by failing to issue an appropriate Notice

of Placement?"  R. at 434.  Plaintiff argued that statement was meant to challenge

whether Drew E.S. was an appropriate placement, and did not mean to challenge the

actual sufficiency of the Prior Written Notice of Placement under the 20 U.S.C. 1415

(c)(1) (requiring "a description of the action proposed or refused by the agency" and "an

explanation of why the agency proposes or refuses to take the action"), the interpretation

that DCPS concluded and argued.  Because the wording did appear to challenge the

sufficiency of the notice, and not the placement itself, the Hearing Officer acknowledged

that, based on the whole complaint, the issue addressed would be whether Drew E.S. was

an appropriate placement, but granted leave to DCPS to prepare its defense on that issue.

R. 431.

Second, the Hearing Officer addressed a factual dispute as to what kinds of

programs D.S. needed, and whether DCPS' proposed placement could meet those needs.

Only D.S.' mother and her advocate (an advocate who never observed D.S. in his

classroom) argued that D.S. needed a fulltime placement—100% special education

services—out of any contact with any regular education children.  R. 439, para. 7.  DCPS

argued in favor of, and the IEP called for, 85% special education services, and being

around non-disabled peers at lunch, recess and specials (special non-academic classes).

R. 440, para. 9f.

As to whether Drew E.S. is an appropriate placement, Plaintiff argued that it was

not appropriate because D.S. would not be in a placement with 100% of time in special

education.  R. 501.  Denise Keeling, Drew E.S. SEC opined that the specialized

instruction and related services called for in his IEP could be provided at Drew E.S.  R.

440.

Based on the documents and testimony of the witnesses, the Hearing Officer found that those who know and service D.S. at school all agree he needs his special education services out-of-general education, and in a self-contained classroom due to his low academic functional levels, but would benefit from being around his non-disabled peers during his free time.  R. 440, 700.

Thus, the Hearing Officer determined that under the IDEIA, DCPS made a free appropriate public education ("FAPE") available to D.S. at Drew E.S. and the parent rejected it.  R. 439.

**3.      Plaintiff's assertions of HOD error are without merit.**

**a.      Plaintiff failed to show that the IEP services were not appropriate.**

Plaintiff wants a fulltime placement for DS—100% special education services—out of any contact with any regular education children.  R. 439, para 7. The IEP calls for 85% special education services, and being around non-disabled peers at lunch, recess and specials.  R. 440, para. 9, fn.  In this case, a 100% full time education setting is not appropriate for the student because it is not the least restrictive environment ("LRE")—a consideration relevant in determining the appropriate placement for students with disabilities.  Branham v. District of Columbia, 427 F.3d 7, 12 (D.C. Cir. 2005).

The objective of the LRE is to most closely approximate the education that the student would receive if he or she were not handicapped.  Kerkam v. Superintendent, D.C. Public Schools, 931 F.2d 84, 86 (D.C. Cir. 1991).  The courts must approach a decision on appropriate placement with the longstanding "presumption that among the alternative programs of education, placement in a

regular public school class with appropriate ancillary services is preferable to

placement in a special school class," Mills v. Board of Ed. of Dist. of Columbia, 348

F.Supp.866, 880 (D.D.C. 1972).  This presumption supports a program of

"mainstreaming," or provision of opportunities to study and socialize in the regular

educational environment, over a full-time special education setting.  Roark v.

District of Columbia, 460 F.Supp.2d 32, 43 (D.D.C. 2006), citing DeVries v.

Fairfax County Sch. Bd., 882 F.2d 876, 878 (4th Cir. 1989).

At the IEP meeting, Kristen M. Denning, DCPS school psychologist, who

performed D.S.'s Comprehensive Psychological Evaluation, recommended "all academic

instruction in a special education classroom." R. 440, para. 9c-d.  She emphasized,

however, that despite being "full time" in his academic setting, D.S.'s behavior was

improving in part due to his interaction with regular education students, noting that he

benefits from "the socialization skills and [the opportunity] to be able to role-play and

take turns with his peers in a regular non-disabled setting." R. 700, paras. 11-17.

Further, both Rhoda Matthews, the SEC at Benning E.S., and Jennifer Webber,

D.S.' regular classroom teacher, testified that, unlike when he first arrived at school, D.S.

was now performing well at Benning E.S., which was further evidence that the student

can behave in a regular education requirement. R. 762, para. 21, R. 787, paras. 17-22.

Specifically, Ms. Matthews testified to the social benefit of D.S.'s interaction with his

non-disabled peers at lunch, recess, and specials. R. 764, paras. 11-15. Ms. Webber added

that D.S. enjoys playing with the other students during these time periods so much that

"he will beg for specials, or recess, or free time." R. 790, paras. 19-22.

Despite such recommendations, the parent requested a 100% out-of-regular-education placement, with no contact with non-disabled peers. The parent's reasoning was limited to a blunt disagreement unaccompanied by any substantive rationale, "I just don't agree with [85%]." R. 501, paras. 16-17. She specifically objected to her son's having lunch or recess with students who are not disabled, again only saying that she "didn't want that." R. 516, para. 21. The parent's advocate cited concerns about a recess program with non-disabled peers, where she observed that some students "had to just stand against the wall because they were afraid to interact with the kids….." R. 648, paras. 3-12. The advocate, however, admits to never observing D.S. at lunch or recess, and to only basing her comments on other students she observed. R. 650, para. 18.

An appropriate IEP is one that is "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley, 458 U.S. 176, 204 (1982). The Supreme Court has clarified, however, that "appropriate" cannot be interpreted to mean "potential-maximizing." Id. at 197. Other than the parent's statements that she wants D.S. in 100% out-of-regular-education environment, there was no evidence presented at hearing that the DCPS-recommended 85% placement in special education was inappropriate.

Accordingly, because the recommendation of 85% placement in special education has not been shown to be inappropriate, the decision of the administrative Hearing Officer should be affirmed.

**b.    Plaintiff failed to establish that Drew ES is not an appropriate placement.**

Plaintiff's complaint alleges that the Hearing Officer erred by concluding that

Drew E.S. was an appropriate placement.  In her Motion (p. 13-14), however, Plaintiff

failed to demonstrate any error by the Hearing Officer.  Indeed, no argument was made in

that regard, other than stating,

> The parent went to visit Drew E.S. and did not think that it was appropriate due
> to the varying ranges of disabilities within the classroom and the varying levels of
> functioning of the other students and that it was not a full time out of general
> education program.

"Although the IDEA guarantees a FAPE, it does not, however, provide that this

education will be designed according to the parent's desires." Shaw v. The District of

Columbia, 238 F.Supp.2d 127, 139 (D.C. 2002).  The "critical question" in determining

the appropriateness of placement is the institution's capacity to implement a student's

IEP.  Angevine v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992).  Notably, the

appropriateness of placement is not determined by considering programs potentially more

beneficial for the student but rather by ascertaining whether some educational benefit can

be achieved at the present placement.  Dawkins v. District of Columbia, 872 F.2d 496

(D.C. Cir. 1989).  Thus, the "inquiry into the appropriateness of the State's program is

not comparative." Savoy-Kelly v. Eastern High School, 2006 WL 1000346, at *8 (D.C.

2006), citing Jenkins v. Squillacote, 935 F.2d 303, 305 (D.C.Cir. 1991).

At hearing, in order to show that Drew was appropriate, DCPS called Denise

Keeling, Drew E.S. SEC, to testify.  Ms. Keeling stated that she was familiar with

D.S.' IEP, and that Drew E.S. could implement that IEP (R. 812-813):

> Q:    [Have] you had the opportunity to review the IEP for [D.S.]?
> A:    Yes.

Q:    Do you have an opinion as to whether you can implement the IEP for
      [D.S.] at your campus?
A:    Yes, we could.
Q:    Do you have an opinion as to whether [D.S.] could benefit from
      instruction at your campus?
A:    Yes, he could.

In support of her conclusions, Ms. Keeling gave a full description of the

classroom that D.S. would be enrolled in. His proposed classroom has seven disability

coded children like DS, with a certified teacher and one full-time aide.  The Program is

located on the first floor of the school along with the head-start and pre-K students.  D.S.

would have lunch, recess, and specials there with his non-disabled peers.  R. 810-813.

Ms. Keeling also answered questions that the parent had after a visit to the said

classroom.  R. 810.

Thus, because Plaintiff failed to meet her burden of proof that DCPS placement

was not appropriate, the Hearing Officer's determination should be affirmed.[3]

c.    **Plaintiff did not establish that DCPS failed to conduct an
      Occupational Therapy (OT) Evaluation.**

Parent alleges that DCPS failed to provide an Occupational Therapy Evaluation.

Motion p. 15.  The Hearing Officer found that the parent failed to present any evidence

on this issue because the administrative record showed that no OT evaluation was called

---

[3] Plaintiff further claims that DCPS violated D.S.' due process rights by failing to hold a placement
meeting before the due process hearing.  The Hearing Officer showed that a placement meeting was held
on February 27, 2007, in which DCPS offered Drew ES as the student's placement.  As shown above, that
placement was appropriate. Plaintiff offers no support for that argument but strangely attempts to introduce
unauthenticated and irrelevant evidence regarding a separate federal court action in Blackman v. District of
Columbia, 454 F. Supp. 2d 1 (D.D.C. 2007).  However, this case was brought under the IDEIA, and the
facts specific to the Blackman litigation are irrelevant here.   Motion p. 14.  Thus, any claims that D.S.'s
due process rights were violated should be denied because Plaintiff failed to properly present those
arguments.

for in D.S.' SEP, "there is no other evidence about why the student needed an OT Evaluation." R. 442, paras. 13 and 15.

Plaintiff's Motion simply notes that DCPS is required to evaluate all students with disabilities; it does not make any argument as to why an OT evaluation is appropriate in this case. Motion p. 15. Since Plaintiff failed to develop her argument that the Hearing Officer was wrong, the HOD should be affirmed as to this claim.

## CONCLUSION

In this case, the record evidence demonstrating that DCPS provided D.S. with a FAPE by immediately evaluating D.S., implementing his IEP, and offering an appropriate placement is straightforward and clear.

Accordingly, the Hearing Officer correctly dismissed all of Plaintiff's claims, and that decision should be affirmed.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

*/s/ Amy Caspari*
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
July 10, 2008                          Washington, D.C. 20001

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KELLY SOWELL, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 07-1659 (EGS) |
| | : |
| GOVERNMENT OF THE | : |
| DISTRICT OF COLUMBIA, | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.    D.S. began attending Benning E.S., a District of Columbia Public School
("DCPS"), during the 2006-2007 school-year.  R. 2.

2.    Previous to attending Benning E.S., he was a student at Fort Foote Elementary
School ("Fort Foote") in Prince Georges County, Maryland.  R. 59.

3.    Fort Foote had implemented an Individualized Education Plan ("IEP") calling
for 15 hours of specialized instruction, and 30 minutes of speech and language
therapy, each week to address D.S.' special education needs.  R. 59.

4.    Benning E.S. immediately implemented that IEP.  R. 85.

5.    After displaying behavioral problems at Benning E.S., a meeting was
convened by DCPS to change the Fort Foote IEP and to create a new student
evaluation plan.  R. 85.

6.    On December 18, 2006, DCPS reconvened to review the evaluations.  R. 152.

7.    The team, including the parent, agreed that Benning E.S. was not an
appropriate placement, increasing D.S.' services to twenty-six hours per week

1

of specialized instruction, one hour per week of speech and language therapy, and thirty minutes per week of psychological services.  R. 142.

8.    The team also agreed that D.S. should be classified as emotionally disturbed, but acknowledged that such a classification was not in his best interest, because they felt his behavior might improve with the right educational setting.  R. 142 and 152.

9.    The members of the team further agreed that the student's least restrictive environment would be out of general education only 85% of the time.  Id.

10.    The parent objected to the team's recommendation and requested 100% time out of general education.  Id.

11.    Parent filed a due process complaint on February 7, 2007.  R. 165.

12.    DCPS proposed Drew E.S. for D.S.' educational placement.  R. 173.

13.    On April 17, 2007, a due process hearing convened.  R. 208.

14.    The parties spent the day at hearing, but more time was needed to present their evidence. Id.

15.    The Hearing Officer continued the hearing to May 22, 2007, as recommended by the parties.  R. 26.

16.    The hearing was again continued to June 1, 2007, and finally to June 5, 2007.  R. 431.

17.    On June 8, 2007, the Hearing Officer issued his decision dismissing Plaintiff's claims with prejudice.  Id.

18. The Hearing Officer addressed the meaning of the issue framed by the plaintiff: "Whether DCPS denied D.S. a FAPE by failing to issue an appropriate Notice of Placement?"  R. 434.

19. The Hearing Officer interpreted that issue to mean whether Drew ES was an appropriate placement.  R 431.

20.  The Hearing Officer granted leave to DCPS to prepare its defense on that issue, because he found that the wording did appear to challenge the sufficiency of the notice, and not the placement itself. R. 431.

21. The Hearing Officer also addressed a factual dispute as to what kinds of programs D.S. needed, and whether DCPS proposed placement could meet those needs.  R. 431-455.

22. D.S.' mother and her advocate argued that D.S. needed a fulltime placement—100% special education services—out of any contact with any regular education children.  R. 439, para. 7.

23. The IEP calls for 85% special education services, and being around non-disabled peers at lunch, recess and specials.  T. 440, para. 9f.

24. At the IEP meeting, Kristen M. Denning, the DCPS school psychologist who performed D.S.' Comprehensive Psychological Evaluation, recommended "all academic instruction in a special education classroom." R. 440, para. 9.

25. Ms. Denning emphasized that despite being "full time" in his academic setting, D.S.' behavior was improving in part due to his interaction with regular education students, noting that he benefits from "the socialization

3

skills and [the opportunity] to be able to role-play and take turns with his peers in a regular non-disabled setting." R. 700, paras. 11-17.

26.    Both the Special Education Coordinator ("SEC") at Benning E.S., Rhoda Matthews, and D.S.' regular classroom teacher, Jennifer Webber, testified that, unlike when he first arrived at school, D.S. was now performing well at Benning E.S., which was further evidence that the student can behave in a regular education requirement. R. 762, para. 21, R. 787, paras. 17-22.

27.    Specifically, Ms. Matthews testified to the social benefit of D.S.'s interaction with his non-disabled peers at lunch, recess, and specials. R. 764, paras. 11-15.

28.    Ms. Webber added that D.S. enjoys playing with the other students during these time periods so much that "he will beg for specials, or recess, or free time." R. 790, paras. 19-22.

29.    Despite such recommendations, the parent requested a 100% out of regular education placement, with zero contact with non-disabled peers.  R. 501, paras. 16-17.

30.    She specifically objected to her son's having lunch or recess with students who are not disabled, again only saying that she "didn't want that." R. 516, para. 21.

31.    The parent's advocate cited concerns about a recess program with non-disabled peers, where she observed that some students "had to just stand against the wall because they were afraid to interact with the kids…." R. 648, paras. 3-12.

32.    The advocate, however, admits to never observing D.S. at lunch or recess and to only basing her comments on other students she observed.  R. 650, para. 18.

33.    Plaintiff's complaint alleges that the Hearing Officer erred by concluding that Drew E.S., was appropriate.

34.    Denise Keeling, Drew E.S. SEC testified that she was familiar with D.S.' IEP, and that Drew E.S. could implement that IEP. R. 812-813.

35.    In support of her conclusions, Ms. Keeling gave a full description of the classroom that D.S. would be enrolled in, the teacher, teacher's aide, and the students and curriculum in that classroom.  R. 810-813.

36.    She also answered questions that the parent had after a visit to the said classroom.  R. 810.

37.    Parent alleges that DCPS failed to provide an Occupational Therapy ("OT") Evaluation.  Motion p. 15.

38.    The Hearing Officer found that the parent failed to present any evidence on this issue.  R. 442, para. 13.

39.    The record shows that no OT evaluation was called for in D.S.' Student Evaluation Plan.  R. 442, para 15.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_/s/ **Edward P. Taptich**_
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

_/s/ **Amy Caspari**_
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
July 10, 2008                          Washington, D.C. 20001

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KELLY SOWELL,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Civ. No. 07-1659 (EGS)** |
| | : |
| **GOVERNMENT OF THE** | : |
| **DISTRICT OF COLUMBIA,** | : |
| | : |
| **Defendant.** | : |
| | : |

## ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's

Cross-Motion for Summary Judgment, the Oppositions and Replies thereto, on this

_____ day of _____, 2008, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED;**

and it is

**FURTHER ORDERED** that this case is dismissed with prejudice.

_____
United States District Judge Sullivan