UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELLY SOWELL<br>as parent and next friend of the minor child,<br>D.S.,<br>and<br>D.S., individually<br><br>    Plaintiffs<br><br>        v.<br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation<br><br>    Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: CIV. ACTION NO. 07-1659 (EGS):<br>:<br>:<br>:<br>: |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.**

COMES NOW, the Plaintiff, by and through undersigned counsel, and replies to Defendant's Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Motion for Summary Judgment, as follows.

**I.   THIS COURT SHOULD GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REVERSE THE HEARING OFFICER'S DETERMINATION.**

The Defendant, the District of Columbia, makes two statements early on in their Reply and Motion for Summary Judgment that prove fatal to their later arguments. The first is the statement that the members of the IEP team agreed that the student's least restrictive environment ("LRE ") would be out-of-general-education 85% of the time.[1] No such thing occurred. In fact, DCPS' own psychologist, Kristian Meyers Denning, in her Comprehensive Psychological Report dated 11/10/06 found on page 116-126 of the

---

[1] Defendant's Motion for Summary Judgment page 2.

Administrative Record stated on page 125 that D.S. needed a full-time program not an 85% program.  Nor of course did the Parent of D.S. agree to an 85% program.   After reviewing the evaluations, and hearing the observations of D.S.'s mother and teachers, the team agreed that Benning ES was not an appropriate placement for D.S., because he requires a full-time program as a student with Mental Retardation (MR)[2]. Specifically, the team decided that D.S. requires twenty-six (26) hours per week of Specialized Instruction, one (1) hour per week of Speech/Language Therapy, as well as thirty (30) minutes per week of Psychological Services.  The team also discussed adding the disability classification of Emotional Disturbance (ED) to D.S.'s IEP due to his behavioral problems.  However, it was decided that given his young age, the ED classification should not yet be placed on the IEP.  The team felt that these behaviors might improve if D.S. is in the appropriate educational setting with one-on-one support.

   The MDT also had a discussion about the percent of time D.S. should be in Specialized Instruction and Related Services.  Ms. Sowell explained that she felt that D.S. needed a 100% out of General Education Setting.  It became apparent at the meeting that D.S. needs a lot of individualized attention, and that his frustrations are compounded when he interacts with higher-functioning peers.  The members of the team from Benning ES, however, would only agree to 85% out of General Education.  Their explanation was simply that DCPS did not have any programs that were 100% out of General Education.  When counsel for the parent stated that the IEP should be

---

[2] Exhibit DS 22 pages 152-155 of the Transcript wherein the MDT notes of 12/18/06 specifically recite that D.S' educational setting is to be "Out of General Ed" and the Location is to be "Placement in a full time MR Program."  Yet because DCPS could not identify such a program they recommend the 85% program at Drew, E.S.

written based on D.S.'s needs, not based on the available programs in DCPS, the DCPS team members still refused to change their position.   Based on these facts, this is certainly a case as stated in *Reid,* that *little* deference should be given to the Hearing Officer and his decision should be reversed.

The second statement fatal to the government's arguments in found on page 6 of their Motion for Summary Judgment wherein they state that the Plaintiff failed to show that the IEP services were not appropriate.  Here again DCPS' own psychologist Ms. Denning had to admit on cross examination on page 736 of the Administrative Record that the teacher and aid at Drew where spending a disproportional amount of time with two of the students in the proposed placement at Drew leaving little time for the students currently in the program let alone adding D.S. to the mix as proposed by the Government.  In addition at page 740, (A.R.) Ms. Denning finally admits Drew is not a 100% program.

Even if this Court believes that the time allocation isn't critical to Plaintiff's position nevertheless Ms. Denning's admitted description of the program at Drew E.S. shows that the proposed program whatever the number of hours out of general education, was not appropriate for D.S.  Ms. Denning's description or more accurately the lack thereof (describing at pages 734 & 735 of the A.R. the DCPS multi-sensory program as some raised letters and yarn) are in complete contrast to Dr. Booker's descriptions of a proper multi-sensory approach to education.  In fact Dr. Booker's description of the type of program at pages 646-657 of the A.R., necessary to meet the educational needs of D.S. are in such sharp contrast to what he would have received at Drew as to lead one to the conclusion that there is no credible basis upon which this

Court could uphold the Hearing Officer's decision.

Not only does Dr. Booker explain why the program at Drew was so inadequate but she was quite descriptive in both her contrasts of what was missing at Drew and what was present at the Children's' Guild.  In Summary, after filing the due process complaint, DCPS proposed Drew Elementary School for D.S. The parent went to visit Drew E.S. and did not think that it was appropriate due to the varying ranges of disabilities within the classroom and the varying levels of functioning of the other students and that it was not a full time out of general education program  A school district must make available to handicapped children a continuum of alternative placements including regular classes, special classes, private schools, home instruction, and instruction in hospitals and institutions and the child must be placed in the "least restrictive environment" responsive to the child's individual needs. 45 CFR 121a.551; Stuart v. Nappi, 443 F. Supp. 1235, 1242 (D.Conn.1978). Second, an educational program must meet the individual educational needs of each handicapped child. See, e.g., 20 U.S.C. § 1401(16), 45 CFR 121a.14, 121a.552, 45 CFR 84.33(b). The regulations specifically define an "appropriate" education as the provision of "regular or special education and related aids and services that are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met." 45 CFR 84.33(b)(1)(I). This emphasis on individualized treatment is also reflected in the federal requirement that an individual educational program, or IEP, be developed for each handicapped child. 0 U.S.C. 1401(19), 1412(4).  Clearly the Hearing Officer did not understand D.C.P.S.' burden of providing a continuum of levels of service and through that lack of understanding

denied a FAPE to this student.

The Hearing Officer erred when he concluded that DCPS did not violate D.S.' rights when it failed to conduct an O.T. evaluation following his mother's request. DCPS' own documents show that they had agreed to conduct at O.T. Evaluation.[3]

Pursuant to 20 U.S.C. 1400 et seq. and 5 D.C.M.R. § 3000.1 (2003) DCPS is required to fully evaluate every child suspected of having a disability within the District of Columbia, ages 3 through 22, determine their eligibility for special education and related services and, if they are found eligible, provide special education and related services through an appropriate IEP and Placement.

## CONCLUSION

Based on the arguments above the Plaintiff requests that this Court issue a Summary Judgment for the Plaintiff and against the Defendant and reverse the June 7, 2007, Hearing Officer's Decision.

Respectfully submitted,

_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
_____/s/_____
Ellen Douglass Dalton, Esq
D.C. Bar No. 411612
Dalton & Dalton, P.C.
1008 Pendleton Street

---

[3] Exhibit DS 10 MDT Meeting Notes of 10/16//06 found at pages 99-100 of the Hearing Transcript recites the Parent's request for an O.T. evaluation that was never completed.

                 Alexandria, Virginia 22314
                 (703) 739-4300 (ph)
                 (703) 739-2323 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document with its attachments was filed electronically on this 25th day of July, 2008.

          /s/
       Paul S. Dalton, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KELLY SOWELL** : <br> as parent and next friend of the minor child,: <br> **D.S.,** : <br> and : <br> **D.S., individually** : <br> : <br> **Plaintiffs** : <br> : <br> v. : <br> **DISTRICT OF COLUMBIA,** : <br> A Municipal Corporation : <br> : <br> **Defendant** : | CIV. ACTION NO. 07-1659 (EGS): |

### ORDER

Upon consideration of the Plaintiff's Motion for Summary Judgment, and any opposition thereto, it is hereby

ORDERED: that Plaintiff's Motion for Summary Judgment is GRANTED;

FURTHER ORDERED: The June 8, 2007 Hearing Officer's Decision is reversed.

SO ORDERED.

_____    _____
Date                                              Emmet G. Sullivan
                                                       United States District Judge