UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELLY SOWELL, | : |
| Plaintiff, | : |
| v. | : Civ. No. 07-1659 (EGS) |
| DISTRICT OF COLUMBIA, | : |
| Defendant. | : |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. **By misapplying the facts in this case, Plaintiff has failed to show that 85% of-the-time in special education is not appropriate.**

   A. **At the hearing, DCPS psychologist, Ms. Denning, defined her classification of "full-time" special education services.**

In its Motion for Summary Judgment, Defendant argues that D.S.'s MDT concluded that an 85% out-of-general-education placement, as recommended by DCPS psychologist Ms. Denning, is appropriate (p. 2). Plaintiff's Opposition, however, alleges that Ms. Denning recommended a full-time program, and not an 85% out-of-general-education program. Plaintiff's argument disregards Ms. Denning's express testimony at the administrative due process hearing. R. 695.

Both parties agreed that, in the Comprehensive Psychological Report she performed, Ms. Denning noted that D.S. "should receive services in a full time program that will address [his] needs." R. 125. When asked to define "full-time" at the administrative hearing, Ms. Denning responded that she had specifically used the term "full-time" rather than "100%" because it "meant that he'll receive all of his instructional

1

in a full-time MR program." R. 695. However, she also expressed the progress of D.S. due to his interaction with non-disabled peers during specials, lunch, and recess. R. 700. Therefore, it is disingenuous of plaintiff to suggest that the notation of "full-time" was at odds with the 85% out-of-general-education plan for academic instruction.

Moreover, Plaintiff has not responded *at all* to Defendant's argument that an 85%, not a 100% placement is D.S.'s least restrictive environment—the IDIEA requirement to offer students opportunities to study and socialize in the regular education environment. Defendant's Motion pp. 6-7.

### B. Plaintiff's assertion that DCPS settled on 85% out-of-general-education has no basis in the record.

In its Motion for Summary Judgment (p. 7) and again in its Opposition to Defendant's Motion for Summary Judgment (p. 2), Plaintiff makes the bald assertion that D.S.'s MDT members only agreed to 85% out-of-general-education because DCPS did not have any 100% out-of-general-education programs. There is, however, absolutely no indication in the record that DCPS's proposal for 85% out-of-general-education was based on program availability and not on D.S.'s evaluations.

The MDT meeting notes state: "In light of the student's response to classroom interventions, a full 100% program is not warranted at this time." R. 152. In fact, at hearing, Ms. Denning flatly denied making any statements at the MDT meeting about the availability of full-time programs within DCPS. R. 737. Thus, while the parent indicated her disagreement with that conclusion, there is no evidence that this was a conclusion based on available programs and not on D.S.'s needs.

II. **Plaintiff's characterization of the IEP services as inappropriate inaccurately interprets both the administrative record and the applicable case law.**

    A. **Ms. Denning did not suggest that D.S.'s proposed placement at Drew would leave "little time" for D.S.**

In its Motion for Summary Judgment (p. 9), Defendant argued that Plaintiff did not meet its burden of demonstrating that placement at Drew was inappropriate. Yet, in its Opposition (p. 3), Plaintiff proffers as evidence of inappropriateness a brief acknowledgement by Ms. Denning that two Drew students may require more time than others in D.S.'s proposed classroom. Plaintiff fails to even attempt an argument as to how it has been shown that this would interfere with the implementation of D.S.'s IEP.

While Ms. Denning did admit that two of the students in this classroom may require a disproportionate amount of attention, there is no indication that this would result in insufficient attention for the remaining students. R. 736. Plaintiff inexplicably characterizes Ms. Denning's single comment as "fatal to the government's arguments," but makes no showing that the range of disabilities in that classroom would prevent the implementation of D.S.'s IEP (p. 3).

    B. **Dr. Booker's testimony does not render the services at Drew inappropriate.**

In its Motion for Summary Judgment, Defendant cites the testimony of Denise Keeling, Drew Special Education Coordinator (SEC), who unequivocally testified that Drew can implement D.S.'s IEP (p. 10). Plaintiff's Opposition, on the other hand, alleges Drew's inappropriateness (p. 3). It purports to do so on the basis of a comparison between his educational advocate Dr. Booker's description of an ideal multi-sensory learning facility, and Ms. Denning's description of Drew's multi-sensory program.

Dr. Booker simply describes an ideal sensory program. R. 646. Plaintiff contrasts this to the testimony of Ms. Denning who testified to some observation of multi-sensory devices, including tactile, visual, and auditory at Drew. R. 735. Unlike Ms. Denning, however, Dr. Booker did not evaluate D.S., never observed D.S. in his classroom, and never spoke to any of his teachers about him. R. 440.

The contrast between the testimony of these two witnesses in no way renders the IEP services inappropriate. The "inquiry into the appropriateness of the State's program is not comparative." Savoy-Kelly v. Eastern High School, 2006 WL 1000346, at *8 (D.D.C. 2006), citing Jenkins v. Squillacote, 935 F.2d 303, 305 (D.C.Cir.1991). The appropriateness of placement is not determined by considering programs potentially more beneficial for the student but rather by ascertaining whether some educational benefit can be achieved at the present placement. Dawkins v. District of Columbia, 872 F.2d 496 (D.C. Cir. 1989).

**C. Drew is able to implement D.S.'s IEP.**

In its Motion for Summary Judgment, Defendant acknowledges the parent's concerns about D.S.'s placement but asserts that Drew is capable of implementing D.S.'s IEP (p. 10). Plaintiff's Opposition, however, makes the bald statement that the program at Drew is "inadequate" (p. 4). It does so on the basis of federal requirements mandating services that are responsive to handicapped children's individual needs, although it offers no indication as to how DCPS has violated such statutes.

Courts have utilized the analogy of providing "the educational equivalent of a serviceable Chevrolet to every student" rather than providing "a Cadillac." Doe v. Board of Educ. of Tullahoma City Schools, 9 F.3d 455, 459 (1993). The "critical question" in

4

determining the appropriateness of placement is the institution's capacity to implement a student's IEP.  <u>Angevine v. Smith</u>, 959 F.2d 292, 295 (D.C. Cir. 1992).  Plaintiff does not focus on D.S.'s IEP but rather proffers as evidence the parent's opinion "that she did not think [Drew] was appropriate" (p. 4).  Taken alone, this opinion in no way renders placement at Drew inadequate.  "Although the IDEA guarantees a Free Appropriate Public Education, it does not, however, provide that this education will be designed according to the parent's desires.  The primary responsibility for formulating the education to be accorded…was left by the Act to state and local educational agencies…."  <u>Shaw v. District of Columbia</u>, 238 F. Supp. 2d 127, 139 (D.D.C. 2002).

### III.    **<u>Plaintiff fails to establish how DCPS violated the IDEIA requirement to evaluate students for all suspected areas of disability.</u>**

Plaintiff's Opposition to Defendant's Motion for Summary Judgment incorrectly states that DCPS's "own documents show that they had agreed to conduct an OT evaluation" (p. 5).  Plaintiff cites as support MDT meeting notes that reflect the parent's request for an OT evaluation, not DCPS's agreement with this request. R. 100.  Further, the SEP developed at the MDT meeting does not recommend an OT evaluation but rather psychological, speech/language, and educational assessments. R. 85.

Plaintiff asserts that "DCPS is required to fully evaluate every child suspected of having a disability" (p. 5).  20 U.S.C.A. § 1414 (b)(3)(B), 34 CFR § 300.304 (c)(4) mandates that a child be "assessed in all areas of suspected disability."  There was no testimony recorded at the MDT meeting, nor any testimony at the administrative hearing, nor any document submitted to the record, that suggested why D.S. might need an OT evaluation.  For this reason, the hearing officer found no evidence that the student needs

5

an OT evaluation or that the particular assessment may relate to a current or suspected disability.  R. 450.

## CONCLUSION

Defendant's Motion for Summary Judgment—seeking to affirm the administrative Hearing Officer's Determination—should be granted.  Plaintiff has failed to demonstrate that the Hearing Officer's findings were not supported by the record evidence.

                                        Respectfully submitted,

                                        PETER J. NICKLES
                                        Acting Attorney General
                                        for the District of Columbia

                                        GEORGE C. VALENTINE
                                        Deputy Attorney General
                                        Civil Litigation Division

                                        ***/s/ Edward P. Taptich***
                                        EDWARD P. TAPTICH [#012914]
                                        Chief, Equity Section II

                                        ***/s/ Amy Caspari***
                                        AMY CASPARI [#488968]
                                        Assistant Attorney General
                                        441 Fourth Street, N.W.
                                        Sixth Floor South
August 8, 2008                         Washington, D.C. 20001